Jennifer F. Novak, SBN 183882
Email: jennifer.novak@jenniferfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
609 Deep Valley Drive, Suite 200
Rolling Hills Estates, California 90274
Telephone: (310) 896-2332
Facsimile: (310) 265-4499

Colin Kelly, SBN 266956
Email: colin@coastkeeper.org
ORANGE COUNTY COASTKEEPER
INLAND EMPIRE WATERKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626
Telephone: (714) 850-1965
Facsimile: (714) 850-1592

*Attorneys for Plaintiffs*
INLAND EMPIRE WATERKEEPER and ORANGE COUNTY COASTKEEPER

JS-6

**FILED**
CLERK, U.S. DISTRICT COURT

AUG 30, 2016

CENTRAL DISTRICT OF CALIFORNIA
BY: ____BH____ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORANGE COUNTY COASTKEEPER, a California non-profit corporation, and INLAND EMPIRE WATERKEEPER, a California non-profit corporation, <br><br> Plaintiffs, <br><br> v. <br><br> SAN BERNARDINO STEEL, INC., a California Corporation, and THE HERRICK CORPORATION, a California Corporation; <br><br> Defendants. | Case No.: 5:15-CV-01256 VAP FFMx) <br><br> **CONSENT DECREE** <br><br> **(Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq.)** |

## CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiffs Inland Empire Waterkeeper and Orange County Coastkeeper ("Plaintiffs" or "Waterkeeper"), and Defendants San Bernardino Steel, Inc. and The Herrick Corporation ("Defendants" or "San Bernardino Steel"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively "Settling Parties."

**WHEREAS**, Orange County Coastkeeper is a non-profit public benefit corporation organized under the laws of the State of California;

**WHEREAS**, Inland Empire Waterkeeper is a program of Orange County Coastkeeper;

**WHEREAS**, together, Inland Empire Waterkeeper and Orange County Coastkeeper are dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of local surface waters;

**WHEREAS**, Defendants operate a fabricated structural metal facility, located at 5454 Industrial Parkway, San Bernardino, California 92407 (the "Facility") that is currently regulated by the Storm Water Permit under WDID 8-36I002420;

**WHEREAS**, Waterkeeper alleges that Defendants are the owners and operators of the Facility;

**WHEREAS**, stormwater discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-57-DWQ ("Storm Water Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342. These industrial activities include, *inter alia*, receiving structural steel; fabricating steel columns; abrasive blasting; vehicle maintenance, cleaning, and storage; vehicle fueling; transporting raw materials across the site; and raw and finished materials storage;

**WHEREAS**, Waterkeeper contends that Defendants' operations at the Facility result in discharges of pollutants into Cable Creek, which flows into the Devil Creek diversion and Cajon Creek, joining Lytle Creek downstream, and then connecting with Reach 4 of the Santa Ana River, and ultimately the Pacific Ocean (collectively "Receiving Waters") and further contends those discharges are regulated by the Clean Water Act, Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the Storm Water Permit includes the following requirements for all permittees, including Defendants: (1) develop and implement a stormwater pollution prevention plan ("SWPPP"), (2) control pollutant discharges using, as appropriate, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants, (3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP, and, (4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards;

**WHEREAS**, on April 17, 2015, Waterkeeper served the registered agent for service of process for Defendants, the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Water Board"), the Executive Officer of the California Regional Water Quality Control Board, Santa Ana Region, ("Regional Water Board"), and the Regional Administrator of EPA Region IX, with a notice of intent to file suit ("60-Day Notice") under Section 505(b)(1)(a) of the of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Clean Water Act and the Storm Water Permit and its previous version, Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ), at the Facility;

**WHEREAS**, on June 28, 2015, Waterkeeper filed a complaint against Defendants in the United States District Court, Central District of California (Civil Case No. 5:15-cv-01256 RSWL (FFM)) ("Complaint");

**WHEREAS**, on July 8, 2015, this case was reassigned to Judge Virginia A. Phillips, and renumbered as Civil Case No. 5:15-cv-01256 VAP (FFMx);

**WHEREAS**, Waterkeeper alleges Defendants are in violation of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act;

**WHEREAS**, Defendants deny all allegations and claims contained in the 60-Day Notice and the Complaint and reserve all rights and defenses with respect to such allegations and claims;

**WHEREAS**, the Parties have agreed that it is in their mutual interest, and therefore choose, to resolve Waterkeeper's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and uncertainties of further litigation; and

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES FOR THE SOLE PURPOSE OF FACILITATING ENTRY AND ENFORCEMENT OF THIS CONSENT DECREE, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:**

1.    The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

2.    Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

3.    The Complaint states claims upon which relief may be granted against Defendants pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365;

4.    Plaintiffs have standing to bring this action; and

5.    By so stipulating, and because they do so only in furtherance of this Consent

Decree, Defendants do not admit or concede any fact alleged by Plaintiffs in the Complaint to support their standing (in either this case or any future litigation) or any of their claims.

### I.   OBJECTIVES

6.   Without admitting any allegation or claim, it is the express purpose of the Settling Parties to settle the claims alleged by Waterkeeper in its complaint.  In light of this objective and as set forth fully below, Defendants agree to comply with this Consent Decree, as well as the Storm Water Permit and all applicable provisions of the Clean Water Act.  Specifically, the Storm Water Permit requires BMPs be developed and implemented to achieve BAT and the BCT, to achieve compliance with the applicable water quality standards, to prepare reports to track the Facility's compliance, and to assess its need for any improvements or changes at the Facility as a consequence.  In consideration of Defendants' agreement, and pursuant to the terms set forth below, Waterkeeper agrees to dismiss this lawsuit.

### II.   AGENCY REVIEW, EFFECTIVE DATE, TERM OF CONSENT DECREE, AND EARLY TERMINATION

7.   **Agency Review**: Plaintiffs shall submit this Consent Decree to the United States Department of Justice and the U.S. EPA (collectively "Federal Agencies") within three (3) business days of the final signature of the Settling Parties for agency review, consistent with 40 C.F.R. § 135.5. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time. Following the Federal Agencies' review, the Parties shall submit the Consent Decree to the Court for entry.

8.   **Effective Date**:  The Effective Date of this Consent Decree shall mean the day this Consent Decree is fully executed by the Settling Parties.

9.   **Term of Consent Decree**:  This Consent Decree shall terminate three (3) years from the Effective Date, or July 31, 2019, whichever is later, unless there is an

1  ongoing, unresolved dispute regarding Defendants' compliance with the Consent Decree,

2  in which case the Consent Decree will terminate within fifteen (15) days of notice by the

3  Settling Parties that the dispute has been fully resolved.

4       10.   **Early Termination**:  If Defendants should cease industrial operations at the

5  site and file a Notice of Termination ("NOT") under the Storm Water Permit before the

6  termination date of this Consent Decree, Defendants shall send Waterkeeper a copy of the

7  proposed NOT concurrent with its submittal to the Regional Water Board.  Within ten

8  (10) days of the Regional Water Board's approval of the NOT, Defendants shall notify

9  Waterkeeper in writing of the approval and remit all outstanding payments, including

10  stipulated payments, to Waterkeeper.  In the event a new successor or assign continues

11  industrial operations at the site and assumes responsibility for implementation of this

12  Consent Decree pursuant to Paragraph 121, Defendants shall notify Waterkeeper within

13  ten (10) days of the transition.

**III.   COMMITMENTS OF THE SETTLING PARTIES**

A. **Storm Water Pollution Control Best Management Practices**

16       11.   In addition to maintaining the current BMPs at the Facility, Defendants shall

17  develop and implement the BMPs identified herein, as well as any other BMPs necessary

18  to comply with the provisions of this Consent Decree and the Storm Water Permit.

19  Specifically, Defendants shall develop and implement BMPs consistent with the BAT

20  and BCT standards as required by the Storm Water Permit, to prevent and/or reduce

21  contamination in storm water discharged from the Facility, and to comply with applicable

22  water quality standards.

23       12.   Listing the BMPs identified herein shall not preclude Defendants from

24  implementing BMPs not listed, and does not require amendment of this Consent Decree

25  in the event that Defendants implement additional BMPs beyond those listed or

26  substitutes BMPs that are designed to achieve the Table 1 Numeric Targets for those

27  listed herein, or if changes in operations or the industrial activities at the Facility

28  eliminate pollutants sources identified in the SWPPP and/or this Consent Decree making

the BMPs previously associated with those pollutant sources unnecessary. Defendants shall notify Waterkeeper of changes to BMPs pursuant to the notice sections of this Consent Decree.

13.    **Pretreatment and Onsite Detention Pond**:  Defendants shall design a detention pond, together with an adjacent bio-strip, to treat, capture, and infiltrate runoff from approximately 23 acres of the southern portion of the Facility, as identified in the revised SWPPP. The onsite runoff will be routed through the bio-strip before entering the detention pond. The bio-strip will be approximately .2 to .4 acres and will be approximately 30 feet in width. The detention pond shall be lined with low-growth annual plantings that do not require irrigation or maintenance, other than occasional mowing.

14.    Detention Pond Capacity:  The site-specific pretreatment and on-site detention pond shall have a design capture volume ("DCV") of an 85th percentile, 24-hour storm event for the San Bernardino area.

15.    Permitting and Approval: Defendants shall complete detention pond design and obtain all necessary permits and approvals no later than September 30, 2016. Once Defendants have obtained the relevant permits, the detention basin shall be constructed and operational within sixty (60) days. Defendants shall diligently file and pursue all required local agency applications for permits for the detention pond and shall diligently pursue the procurement of contractors, labor and materials to complete the detention pond by the September 30, 2016 deadline, and shall use their best efforts to meet this deadline. If, after using best efforts to meet this deadline, Defendants cannot attain the deadline due to circumstances beyond their control (such as delay in obtaining any required governmental permits or approvals), they shall be excused from meeting this deadline so long as Defendants continue to exercise due diligence and best efforts in pursuing the permitting and implementation of the BMP. Furthermore, any excused delay shall not excuse Defendants from implementing other, unexcused obligations under this Consent Decree. Either party may invoke dispute resolution pursuant to Section VI below

1   if a dispute arises regarding the implementation of the detention pond and such disputes

2   shall be resolved pursuant to the dispute resolution procedures in Section VI.

3       16.   <u>Interim Period</u>:  Until such time as the detention pond BMP is implemented,

4   Defendants shall implement the identified BMPs herein and will continue to implement

5   such BMPs as stated in the SWPPP.

6       17.   <u>System Inspection Logs</u>: Upon installation of the detention pond and

7   pretreatment systems, Defendants shall maintain logs ("System Inspection Logs") in

8   which observations made during monthly inspections of the system are recorded.  For

9   each system, the observation log shall include the location of the system observed, the

10  date and time of the inspection, the person performing the inspection, and any corrective

11  action taken. The System Inspection Log shall be made available for inspection by

12  Waterkeeper at any site inspection or otherwise within fourteen (14) business days of an

13  advance request by Waterkeeper

14      18.   <u>Maintenance of BMP Structural Controls</u>:  Beginning on the Effective Date

15  or the date of installation, Defendants shall maintain all structural BMPs at the Facility in

16  good operating condition and shall promptly repair any damaged or degraded structural

17  BMPs.

18      19.   <u>Maintenance Log of BMPs</u>:  Beginning on the Effective Date or the date of

19  installation, Defendants shall maintain logs ("Maintenance Logs") in which observations

20  made during monthly inspections of structural BMPs, apart from the on-site detention

21  and pretreatment systems, are recorded.  For each structural BMP, the observation log

22  shall include the location of the structural BMP observed, the date and time of the

23  inspection, the person performing the inspection, and any corrective action taken.

24      20.   **Additional BMPs**:  The BMPs included in this Section constitute a

25  preliminary approach to stormwater management at the Facility for the first year of the

26  agreement. If, after implementing these BMPs, the sampling conducted in accordance

27  with Section IV of this Consent Decree indicates that the Facility's stormwater discharges

28  exceed the Numeric Limits in Table 1 or do not meet water quality standards, Defendants

shall propose additional BMPs as part of any Action Plan prepared in accordance with Paragraphs 67-69 below.

21.   **Substitute BMPs**:  Should Defendants decide to substitute BMPs for equivalent or more effective BMPs, they shall notify Waterkeeper before implementing the substituted BMPs pursuant to the Notice Provision in Paragraph 86 below.

22.   **Unauthorized Non-Storm Water Discharge**s:  Beginning on the Effective Date of this Consent Decree, Defendants shall eliminate all non-authorized non-storm water discharges from the Facility.

23.   **Non-Structural Best Management Practices:** Defendants shall implement the following non-structural BMPs:

24.   Rain Gauge:  Defendants shall install a rain gauge capable of measuring and recording rainfall from at least 0.1 inches at the Facility.  Defendants shall provide rain gauge data to Waterkeeper within fourteen (14) days of receipt of a written request by Waterkeeper.  System performance will be measured using the data generated by the rain gauge located at the Facility. Following the complete implementation of pretreatment and the on-site detention pond, discharges from the Facility occurring as a result of precipitation that exceeds the designed or constructed detention pond's DCV ("Design Storm") shall not be required to meet the Numeric Limits in Table 1.

25.   Defendants shall undertake additional housekeeping BMPs as identified in Defendants' SWPPP.

B.   **Visual Observations**

26.   Storm Water Discharge Observations: During the life of this Consent Decree, Defendants shall conduct visual observations at a discharge location when it performs sampling as required by the Storm Water Permit and this Consent Decree.

27.   Non-Storm Water Discharge Observations: During the life of this Consent Decree, Defendants shall conduct monthly non-storm water visual observations at Outfall 2 and, after it becomes operational, the discharge point in the detention pond.

/ / /

28.   <u>Visual Observation Records</u>:  Defendants shall maintain observation records to document compliance with this section, and shall provide Waterkeeper with a copy of these records pursuant to the terms of this Consent Decree.

C.   **Employee Training**

29.   <u>Training Program</u>**:**  Within forty-five (45) days of the Effective Date, Defendants shall develop and have begun to implement an employee training program to ensure: (1) that there are sufficient number of employees delegated to achieve compliance with the Storm Water Permit and this Consent Decree, and (2) that these employees are properly trained to perform the activities required by the Storm Water Permit and this Consent Decree ("Training Program"). At a minimum, the Training Program shall require the following:

30.   <u>SWPPP and BMP Training</u>:  Defendants shall train all employees who work in areas where industrial materials or activities are exposed to storm water, or who are responsible for implementing activities necessary to meet elements of the SWPPP ("Responsible Employees"), on the SWPPP and on the BMPs identified in this Consent Decree to ensure that BMPs are implemented effectively and on schedule, and that structural BMPs are maintained properly. Defendants shall train such employees on their specific responsibilities in implementing BMPs. The training must include proper handling (collection, storage, and disposal) of liquids and sand-blasting materials.

31.   <u>Storm Water Sampling Training</u>:  Defendants shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree. The Training Program shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory or analyzed onsite, as applicable.

32.   <u>Training Language</u>:  Defendants shall conduct the Training Program in the language or languages in which all employees participating are fluent.

/ / /

33.     Frequency: The Training Program shall be repeated annually, or as necessary to ensure that all Responsible Employees are familiar with the requirements of this Consent Decree and the Storm Water Permit.

34.     New Employees:  All new staff who will be Responsible Employees will participate in the Training Program before assuming responsibilities for compliance with this Consent Decree or the Storm Water Permit.

35.     Visual Observation Training:  Defendants shall provide training on how and when to properly conduct visual observations to all Responsible Employees performing visual observations at the Facility.  All new staff who will be Responsible Employees will receive this training before assuming responsibilities for implementing the SWPPP.

36.     Non-Stormwater Discharge Training:  Defendants shall train all employees at the Facility on the Storm Water Permit's prohibition of non-stormwater discharges, so that they know what non-stormwater discharges are, that non-stormwater discharges can result from improper surface washing or dust control methods, and how to detect and prevent non-stormwater discharges.

37.     Knowledgeable Representative:  The Training Program shall be provided by a private consultant or representative of Defendants who are familiar with the requirements of this Consent Decree and the Storm Water Permit.

38.     Training Records:  Defendants shall maintain training records to document compliance with this section.

39.     Integration of Employee Training into SWPPP:  If and when appropriate, Defendants shall integrate any new training requirements resulting from this Consent Decree into the Facility SWPPP. Defendants shall also update the SWPPP, if and when appropriate, to identify the positions responsible for carrying out stormwater management, monitoring, sampling, and SWPPP implementation.

/ / /

/ / /

D.   **Storm Water Pollution Prevention Plan**

40.    Within thirty (30) days of the Effective Date, Defendants shall amend the Facility SWPPP to incorporate the requirements and BMPs set forth in Section I and Section X of the Storm Water Permit and Section III of this Consent Decree, and submit the updated SWPPP to Waterkeeper within fourteen (14) business days thereafter. Defendants' revised SWPPP will be an attachment to this Consent Decree, fully enforceable by Waterkeeper and the Court.

41.    Site Map and Description:  Defendants shall ensure that the SWPPP includes an updated Site Map to comply with the Storm Water Permit, Section X.E. The Site Map shall clearly denote (a) the topography and the direction of stormwater flow for each drainage area of the Facility, (b) identify property boundaries, (c) known or suspected drop inlets, (d) ground type (pervious or impervious), (e) berms and the materials they are composed of, (f) discharge points, (g) sampling points, (h) infiltration basins and bioswales, (i) any permanent structures and features, and (j) all other physical structures or items relevant under the Storm Water Permit and this Consent Decree.  During the term of the Consent Decree, if Defendants make significant changes to the Facility, such as moving a discharge or sampling point, modifying the topography of the site so as to change a drainage area, or removing or adding structural BMPs, Defendants shall update the SWPPP within forty-five (45) days and submit the revised SWPPP to Waterkeeper, Regional Water Board, and State Water Board, consistent with the requirements of Paragraph 47 of this Section.

42.    Change of Industrial Processes:  If, during the term of the Consent Decree, Defendants change the Facility's industrial processes or operation in a way that increases the quantity or frequency of pollutant discharges, then Defendants shall notify Plaintiffs within thirty (30) days of such change(s) and conduct sampling for qualifying pollutants as required by the Permit.  These SWPPP revisions shall occur within forty-five (45) days of the changes in operations.

/ / /

43.   <u>Change of Programs</u>: Should Defendants revise its SWPPP in the future, including revisions to programs detailed within the SWPPP, such as sampling, monitoring, and reporting, Defendants agree to submit the revised document to Waterkeeper for review within thirty (30) days of the revisions.

44.   <u>Visual Inspection Checklist</u>: Defendants shall create a visual inspection checklist that must be used by trained facility personnel when conducting the visual observations and monitoring of storm water required under this Consent Decree.

45.   <u>Training Program</u>: Defendants shall include the Training Program requirements listed in Paragraphs 29-30.

46.   **Additional Revisions to the SWPPP**: Defendants shall revise the Facility's SWPPP if there are any changes in the Facility's operations that will alter storm water management such that the SWPPP is no longer accurate, including but not limited to changes to storm water discharge point(s) or changes or additions to the BMPs at the Facility, whether made pursuant to an Action Plan or not, within thirty (30) days of the occurrence of any of the events listed in this Consent Decree.

47.   **Waterkeeper's Review of SWPPP**:  Defendants shall submit each revised SWPPP to Waterkeeper for review and comment within five (5) days of its completion. Waterkeeper shall have thirty (30) days from the receipt of any amended SWPPP to propose any changes to the SWPPP. Within thirty (30) days of notification by Waterkeeper of any proposed changes to the SWPPP, Defendants shall incorporate all of Waterkeeper's changes to the amended SWPPP, or else justify in writing why any comment is not incorporated within thirty (30) days of receiving the comments.

48.   **Disputes**: Any disputes as to the adequacy of the SWPPP or any individual program revisions shall be resolved pursuant to the dispute resolution procedures in Section VI below.

### IV.   SAMPLING, MONITORING, INSPECTION & REPORTING

49.   **Stormwater Sampling Program**:  Defendants shall continue to collect stormwater samples from Outfall 2 before the detention pond is operational, and then also

from the detention pond's discharge point after the pond is operational during the term of the Consent Decree, as described below.  For purposes of this Consent Decree, this includes storm water discharge(s) occurring during the Facility's operating hours, or, if storm water is stored onsite prior to discharge, whenever stormwater is released outside these hours. Any failure to sample a discharge from the discharge points referenced above shall be documented and submitted to Waterkeeper within five (5) days of the date a sample could have been collected but was not. Defendants shall analyze the samples for the constituents identified in Table 1.

50. **Waterkeeper's Review of Revised M&RP**: Defendants agree to submit the Monitoring and Reporting Program ("M&RP") to Waterkeeper for review and comment as soon as it is completed but in any event, no later than thirty (30) days from the Effective Date of this Consent Decree. Waterkeeper shall provide comments, if any, to Defendants within thirty (30) days of receipt of the M&RP. Defendants shall incorporate Waterkeeper's comments into the M&RP, or shall justify in writing why any comment is not incorporated within fourteen (14) days of receiving comments. Any disputes as to the adequacy of the M&RP shall be resolved pursuant to the dispute resolution provisions in Section VI below.

51. **Additional Revisions to M&RP**:  Defendants shall revise the M&RP if there are any changes in a Facility's discharge point(s), if Defendants discover a change in a Facility's storm water discharge point(s), or as applicable to incorporate sample sampling or monitoring change in any Action Plan(s). Defendants shall submit any revised M&RP to Waterkeeper for review and comment within fifteen (15) days of completion. Waterkeeper shall provide comments, if any, to Defendants within thirty (30) days of receipt of any revised M&RP, or shall justify in writing why any comment is not incorporate within thirty (30) days of receiving comments.

52. **Disputes**: Any disputes as to the adequacy of the M&RP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, as set out in Section VI below.

53.   **Sampling**:  The following storm water monitoring procedures shall be implemented at the Facility:

54.   <u>Frequency</u>: During the life of this Consent Decree, Defendants shall collect samples of any storm water discharge from the Facility during the scheduled operating hours as defined in the SWPPP as a result of a Qualified Storm Event ("QSE") as defined in the Storm Water Permit as follows: for the 2016-2017 wet season (defined as October 1-May 31), all QSEs shall be sampled. Should the Facility's samples test below applicable Numeric Action Levels during the 2016-2017 wet season, the Facility may reduce its sampling to frequencies consistent with its Storm Water Permit for the 2017-2018 wet season.  For the 2018-2019 wet season, the Facility may follow the protocol found at Section XI.C.7 of its Storm Water Permit if applicable.

55.   For all sampling events, if stormwater is stored onsite prior to discharge, samples shall be collected during first hour of discharge.

56.   <u>Discharge Locations</u>:  During the life of this Consent Decree, Defendants shall collect samples from Outfall 2 for so long as the Facility discharges storm water to it.  After the detention pond becomes operational, Defendants shall also collect samples from the discharge point in the detention pond.

57.   <u>Parameters</u>:  All samples collected pursuant to this section shall be analyzed for the parameters listed in Table 1.

58.   <u>Change of Industrial Activities</u>:  Should industrial processes materially change at the Facility, Defendants shall notify Waterkeeper pursuant to the Notice Provision of Section 34 below.  Defendants shall conduct sampling for any additional toxic priority pollutants listed in 40 C.F.R. § 131.38 likely to be present in the Facility's stormwater discharges in significant quantities as a result of the changed industrial processes.

/ / /

59.     Lab:  Except for pH samples, Defendants shall have all stormwater samples collected pursuant to this Consent Decree delivered to a California state certified environmental laboratory for analysis within the time needed for analysis within laboratory method allowable hold times, pursuant to 40 C.F.R. Part 136.  However, pH will be analyzed onsite using a calibrated portable instrument for pH in accordance with accompanying manufacturer's instructions.

60.     Detection Limit: The laboratory shall thereafter conduct analysis sufficient to detect individual constituents at or below the values set forth in Table 1.

61.     Holding Time: All samples collected from the Facility shall be delivered to the laboratory and analyzed within the holding times required in 40 C.F.R. Part 136, excepting pH, which will be analyzed onsite using a calibrated portable instrument for pH in accordance with accompanying manufacturer's instructions.

62.     Lab Reports: Defendants shall request the sample-analysis results and associated chain of custody forms be reported to them within fourteen (14) days of laboratory receipt of the sample.

63.     Reports to Waterkeeper:  After the Effective Date of this Consent Decree, Defendants shall provide complete results from sampling and analysis to Waterkeeper within fourteen (14) days of receipt of the laboratory report from each sampling event.

64.     Sampling Reduction:  Defendants may discontinue analyzing stormwater samples collected pursuant to this Consent Decree at any discharge location(s) for a constituent listed in Table 1 that is not otherwise required by the Storm Water Permit, if the sample result for the Table 1 constituent is not detected for four (4) consecutive sample results, and Defendants have collected and analyzed the sample pursuant to this Consent Decree.

/ / /

/ / /

65.     **Numeric Limits**:  Laboratory results of parameters in samples collected from the Facility's discharge points shall not exceed the limits ("Numeric Limits") in Table 1[1].  Any discharge from the Facility in excess of, or outside the range of, the Numeric Limits in Table 1 during a single reporting year shall trigger the Action Plan requirements of this Consent Decree.  Nothing in this Consent Decree shall constitute or imply an admission or concession on Defendants' part that they are liable for any exceedances (past, present and future) caused by discharges at Outfall 2.

66.     Table 1 – Numeric Targets for Storm Water Discharges

| Contaminant | Numeric Limit (All but pH expressed as mg/L; hardness dependent limits in bold) |
| --- | --- |
| Total Suspended Solids | 100 |
| Oil and Grease (O&G) | 15 |
| Chemical Oxygen Demand (COD) | 120 |
| Biochemical Oxygen Demand (BOD) | 30 |
| Total Recoverable Aluminum | 0.75 |
| Total Recoverable Iron | 1.0 |
| Total Recoverable Mercury | 0.0024 |
| Total Recoverable Zinc | **0.260** |
| Dissolved Copper | **0.032** |
| Dissolved Lead | **0.170** |

[1] Several of the Numeric Limits are hardness dependent. The hardness dependent limits are in bold, and have been adjusted using methods provided in Appendix J of the 2008 EPA Multi-Sector General Permit and/or the California Toxics Rule as applicable based on hardness data for the Santa Ana River. Table 1 uses a hardness of 250 mg/L CaCO$_3$. based on hardness data for the Santa Ana River as prepared by the Santa Ana Watershed Project Authority and reported in the 2011 Annual Report of Santa Ana River Water Quality.

| Total Recoverable Arsenic | 0.1685 |
|---|---|
| pH | 6.5 to 8.5 s.u. |
| N+N | 0.68 |

67.   **Action Plan for Table 1 Numeric Target Exceedance**:  Defendants shall submit an Action Plan for reducing and/or eliminating the discharge of pollutants if any sampling for any contaminant demonstrates that any contaminant found in Table 1 exceeds the Numeric Limit.  Discharges from the Facility occurring as a result of precipitation that exceeds the Design Storm shall not implicate the requirement for Defendants to prepare an Action Plan.  Defendants' obligations under the Consent Decree do not displace Defendants' obligations to sample and comply with the Storm Water Permit's ERA process.  In any year that an Action Plan is required, it shall be submitted by the following July 1.

68.   <u>Requirements</u>:  Each Action Plan submitted shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the Numeric Limit(s); (2) an assessment of the source of each pollutant exceedance; (3) the identification of additional BMPs, including treating storm water prior to discharge from the Facility, that will be implemented to achieve compliance with the Numeric Limit(s); and (4) time schedules for implantation of the proposed BMPs.

69.   <u>Time Schedule</u>:  The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1 of that year.  If structural BMPs are proposed, and agreed to between the Parties, which require agency approval, then Defendants shall contact Waterkeeper to request an extension of the deadline, if necessary, to implement the structural BMPs. Waterkeeper's consent to Defendants' requested extension shall not be unreasonably withheld.  Any time an Action Plan is completed after Waterkeeper's review, as set forth in Paragraph 70 below, Defendants shall also revise their M&RP and SWPPP as applicable within thirty (30) days.

70.   <u>Waterkeeper's Review of Action Plan</u>:  Waterkeeper shall have thirty (30) days from receipt to propose revisions to the Action Plan.  However, if Waterkeeper notifies Defendants within thirty (30) days of receipt of the Action Plan that it is unable to provide comments within thirty (30) days, Waterkeeper shall have an additional fifteen (15) days to propose revisions to the Action Plan.  Within thirty (30) days of receiving Waterkeeper's proposed revisions, Defendants shall consider each of Waterkeeper's recommended revisions to the Action Plan and accept them or timely request to meet and confer, in accordance with this Consent Decree.

71.   <u>Structural BMPs</u>:  If structural BMPs are proposed, and agreed to between the Parties, which require agency approval, then Defendants shall contact Waterkeeper to request an extension of the deadline, if necessary, to implement the structural BMPs.  Waterkeeper's consent to Defendants' requested extension shall not be unreasonably withheld.  Any time an Action Plan is completed after Waterkeeper's review, as set forth above, Defendant shall also revise its M&RP and SWPPP as applicable within thirty (30) days.

72.   <u>Obligation of Consent Decree</u>:  Defendants shall implement the Action Plan(s) adopted pursuant to this Consent Decree as an obligation of this Consent Decree.

73.   <u>Diligently File</u>: Defendants shall diligently file and pursue all required local agency applications for permits and/or approvals for the BMPs included in any Action Plan.  Defendants shall further diligently pursue the procurement of contractors, labor, and materials to complete all BMPs by the October 1 deadline.

74.   <u>Implementation into SWPPP</u>:  Within thirty (30) days after BMPs set forth in an Action Plan pursuant to this Consent Decree are implemented, Defendants shall amend the Facility SWPPP to include all BMP revisions or additions not otherwise already implemented and included in the SWPPP and shall provide Waterkeeper with a copy of such revised SWPPP.

/ / /

75.   **Action Plan for Detention Pond DCV Deficiencies**:  If Defendants' or Waterkeeper's sampling, visual observations, and/or photographs provide evidence of a discharge from the Facility inconsistent with the DCV, Defendants shall, within sixty (60) days of that discharge, submit to Waterkeeper a plan to modify BMPs to comply with that DCV Action Plan, including consideration of:

76.   Improved housekeeping;

77.   Increased detention basin size;

78.   Convert to infiltration basin; and

79.   Improved pretreatment.

80.   The Action Plan shall include data, drawings, and other design rationale demonstrating that the proposal shall achieve compliance with SWPPP, Storm Water Permit and Consent Decree requirements.

81.   Waterkeeper shall have sixty (60) days to comment on the Action Plan.

82.   If the Settling Parties are unable to agree to the adequacy of the Action Plan, either Settling Party may invoke dispute resolution procedures pursuant to Section VI below.

83.   **Duty to Evaluate**. Between October 1 and May 31 of each reporting year, Defendants have an ongoing obligation to evaluate the BMPs implemented at the Facility and included in this Consent Decree and any current or previous Action Plans, and, if Defendants have exceeded Numeric Limits, make attempts to reduce the concentrations to Numeric Limits or otherwise meet BAT or BCT, as appropriate, until May 31 of that reporting year.  Defendants shall use the results from subsequent stormwater samples as they become available to assist with their ongoing evaluation of the effectiveness of BMPs.

84.   **Site Inspections**:  During the life of this Consent Decree, Defendants shall permit representatives of Waterkeeper to perform up to two (2) physical inspections per year of the Facility during operating hours ("Site Inspection").  Waterkeeper shall provide Defendants with forty-eight (48) hours of notice in advance of such Site

Inspections.  Waterkeeper shall comply with all safety instructions provided to Waterkeeper by Defendants' staff during all Site Inspections. During Site Inspections, Waterkeeper shall be allowed to inspect and sample any stormwater discharges, Maintenance Logs, Annual Records, employee training records, visual observation training records, and take photos and/or videos related to Storm Water Permit or Consent Decree compliance.

85.   **Waterkeeper's Document Request Provision**:  During the life of this Consent Decree, and occurring no more than five (5) times per year, Defendants shall provide records of their compliance with its SWPPP, the Storm Water Permit, and this Consent Decree to Waterkeeper within fourteen (14) days of receipt of a written request by Waterkeeper. Such requested documents may include reports of spills, rain gauge data, visual observation records, corrective actions taken at the site, employee training documents and training records, SWPPPs, system inspection logs, maintenance logs, Action Plans, and any other documents relevant to Defendants' compliance with the Storm Water Permit or the Consent Decree.

86.   **Notice Provision**:  Defendants shall provide Waterkeeper with written notice of the above-listed occurrences/changes in compliance within 14 (fourteen) days of the occurrence/change. Specifically, if it is a change to a document, Waterkeeper shall provide comments, if any, to Defendants within thirty (30) days of receipt of the Notice. Defendants shall incorporate Waterkeeper's comments in making the change to the document, or else justify in writing why any comment was not incorporated within thirty (30) days of receiving the comments. Any disputes arising from the noticed occurrence/change shall be resolved pursuant to the dispute resolution procedures of Section VI below.

87.   **Submitted Documents Provision**:  During the life of this Consent Decree, Defendants shall provide Waterkeeper with a copy of all documents and communications related to water quality submitted to the Regional Water Board, the State Water Board, and/or any Federal, State, local agency, county, or municipality. Such documents and

reports shall be transmitted to Waterkeeper concurrently as they are sent to the agencies and/or municipalities. Any correspondence related to water quality received by Defendants from any Federal, State, local agency, county, or municipality shall be provided to Waterkeeper via email within three (3) business days of receipt by Defendants.

## V.   ENVIRONMENTAL PROJECT, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, COMPLIANCE MONITORING AND INTEREST

88.   **Environmental Project:**  Defendants agree to make a payment of Seventy Thousand Dollars ($70,000) to the Rose Foundation for Communities and the Environment to fund environmental project activities that will benefit the Southern California Bight and its watershed. The payment shall be made within ten (10) days of the entry of this Consent Decree by the Court payable to the "Rose Foundation for Communities and the Environment" and delivered via certified mail, overnight delivery, or wire transfer to: 1970 Broadway, Suite 600, Oakland, California 94612-2218. Defendants shall provide Waterkeeper with a copy of such payment at the time it is made.

89.   **Waterkeeper's Litigation Fees and Costs**:  To satisfy Waterkeeper's claim for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating this Consent Decree, Defendants shall pay a total of One Hundred Seventy Two Thousand Dollars ($172,000.00). The payment shall be made within ten (10) days of the end of the 45-day Federal Agencies review period or within (10) days of the date the Federal Agencies inform the Court that they have no objections to entry of this Consent Decree, whichever is sooner, payable to:  "Orange County Coastkeeper" and delivered by certified mail, overnight delivery, or wire transfer to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

90.   **Stipulated Penalties**:  Defendants shall make stipulated payments for each failure to comply with the terms of this Consent Decree, as described in this paragraph. Payments for missed deadlines shall be made to "Rose Foundation for Communities and

the Environment" and delivered via certified mail, overnight delivery, or wire transfer to: 1970 Broadway, Suite 600, Oakland, California 94612-2218. Defendants agree to make the stipulated payment within thirty (30) days of a missed deadline. Defendants shall provide Waterkeeper with a copy of each such payment at the time it is made.

91.   <u>Failure to Collect Storm Water Samples:</u> For each failure to collect a storm water sample as required by the SWPPP and Storm Water Permit, Defendants shall make a remediation payment of One Thousand Dollars ($1,000) beginning with the 2016-2017 wet season.

92.   <u>Failure to Submit Documents:</u>  For each day the Defendants have failed to timely submit any document, report, or other communication required by the Consent Decree, Defendants shall pay Five Hundred Dollars ($500) per day after the report due date, payable to the Rose Foundation.

93.   <u>Failure to Submit Payments:</u>  For each business day the Defendants have failed to submit payments required by the Consent Decree, Defendants shall pay Five Hundred Dollars ($500) per day, payable to the Rose Foundation.

94.   **Compliance Monitoring and Oversight**:  Defendants agree to defray Waterkeeper's monitoring of Defendants' compliance with this Consent Decree in the amount of Five Thousand Dollars ($5,000) per year, totaling Fifteen Thousand Dollars ($15,000). Provided that Federal Agencies have not commented negatively on or objected to this Consent Decree, the payment shall be made within ten (10) business days following the conclusion of the 45-day Federal Agency review period. If the Federal Agencies have commented negatively or objected to entry of this Consent Decree, the payment shall be made within ten (10) business days of the approval and entry of the Consent Decree by the Court. The payment shall be made via wire transfer or check, made payable to: "Orange County Coastkeeper" and delivered by certified mail or overnight delivery, unless payment via wire transfer, to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

/ / /

95.     **Interest on Late Payments**:  Defendants shall pay interest on any payments, fee or costs owed to Waterkeeper under this Consent Decree that Waterkeeper has not received by the date due.  The interest shall accrue starting the first day after the payment is due and shall be computed at 1.5% per month (18% per year).

96.     Nothing in Paragraphs 88, 89, and 94 shall be construed as a concession by Defendants of the propriety or reasonableness of the payments identified therein.

## VI.     DISPUTE RESOLUTION

97.     The Court shall retain jurisdiction over this matter for the life of the Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Settling Parties that may arise under the provisions of the Consent Decree.  The Court shall have the authority to enforce this Consent Decree with all available legal and equitable remedies.

98.     If a dispute under this Consent Decree arises or if a Settling Party believes that a breach of this Consent Decree has occurred, the Parties shall follow the following procedure:

99.     Meet and Confer:  The Party shall invoke the dispute resolution procedures of this Section by notifying the other Settling Party in writing of the disputed matter(s). The Settling Parties shall schedule a meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) days from the date of the notice.  The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.  The Settling Parties shall bear their own fees and costs associated with efforts to informally resolve the dispute without court intervention.

100.    If the Settling Parties cannot resolve a dispute by the end of meet and confer and informal negotiations, the Party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

101.   Defendants agree not to challenge Waterkeeper's standing in any proceeding to enforce this Consent Decree under Section VI ("Dispute Resolution").

102.   <u>Fees and Costs To Resolve Dispute</u>: The party that prevails on a motion brought under paragraph 100, *supra*, shall be entitled to reasonable attorneys' fees and costs.

103.   For informal or formal dispute resolution, Defendants bear the burden of proving that their BMPs comply with the Consent Decree and the Storm Water Permit.

**VII.   MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

104.   **Waterkeeper's Release**:  Waterkeeper, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns releases Defendants, their officers, directors, employees, members, parents, subsidiaries, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims raised in the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint.

105.   **Defendants' Waiver and Release of Waterkeeper**:  Defendants, on their own behalf and on behalf of their officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns release Waterkeeper and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns from, and waive all claims which arise from or pertain to, the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint.

106.   Nothing in this Consent Decree limits or otherwise affects Waterkeeper's or Defendants' rights to address or take any position that they deem necessary or

appropriate in any formal or informal proceeding before the State Water Board, Regional Water Board, EPA, any other judicial or administrative body, or any other public forum. If either party anticipates taking a position adverse to the other regarding Defendants' compliance with this Consent Decree or claims raised in Plaintiffs' 60-day Notice or Complaint, specific to either or both Defendants, that party will provide reasonable written notice to the other party of such intent.  Both parties agree to abide by the Consent Decree in good faith.  Should either party deem any part of this Consent Decree illegal or unenforceable, the dispute resolution procedures identified in Section VI will apply.

**VIII.   MISCELLANEOUS PROVISIONS**

107.  **No Admission of Liability**:  Nothing in this Consent Decree, or implementation of additional BMPs, shall constitute or be construed as a concession of any factual or legal allegation in the 60-day notice or Complaint.  Defendants maintain and reserve all defenses they may have to any allegation of a violation, now and in the future.

108.  **Force Majeure**: Force Majeure includes any act of God, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance, shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Settling Parties shall exercise due diligence to resolve and remove any Force Majeure event. Delay in compliance with a specific obligation under this Consent Decree due to Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

109. **Construction**: The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

110. **Choice of Law**: This Consent Decree shall be governed by the laws of the United States.

111. **Severability**: In the event that any of the provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

112. **Correspondence**: All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by overnight mail, courier, or email as follows:

If to Plaintiff:

> Orange County Coastkeeper
> Colin Kelly, Senior Staff Attorney
> 3151 Airway Avenue, Suite F-110
> Costa Mesa, California 92626
> E-mail: colin@coastkeeper.org

If to Defendants:

> Ward Benshoof
> Paul J. Beard II
> ALSTON & BIRD LLP
> 1115 Eleventh Street
> Sacramento, California 95814
> Email: paul.beard@alston.com

> With copies to:
> San Bernardino Steel
> Attention: Doug Griffin
> The Herrick Corporation
> 3003 East Hammer Lane
> Stockton, CA 95212
> Email: dougg@herricksteel.com

1    Notifications of communications shall be deemed submitted on the date that they

2   are emailed, or postmarked and sent by first-class mail or deposited with an overnight

3   mail/delivery service. Any changes of address or addressees shall be communicated in

4   the manner described above for giving notices.

5        113.   **Execution in Counterparts**:  The Consent Decree may be executed in any

6   number of counterparts, all of which together shall constitute one original document.

7   Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be

8   deemed to be originally executed counterparts of this Consent Decree.

9        114.   **Authority to Sign**:  The undersigned representatives for Waterkeeper and

10   Defendants each certify that he/she is fully authorized by the party whom he/she

11   represents to enter into the terms and conditions of this Consent Decree.

12        115.   **Signatures**:  The Parties' signatures to this Consent Decree transmitted by

13   facsimile or electronic mail transmission shall be deemed binding.

14        116.   **Integration Clause**:  This is an integrated Consent Decree.  This Consent

15   Decree is intended to be a full and complete statement of the terms of the agreement

16   between the Settling Parties and expressly supersedes any and all prior oral or written

17   agreements, covenants, representations and warranties, express or implied, oral or

18   written, of the Parties concerning the subject matter of this Consent Decree.

19        117.   **Full Settlement**:  This Consent Decree constitutes a full and final settlement

20   of this matter.  The Court's entry of this Consent Decree shall constitute entry of a final

21   judgment in this case.

22        118.   **Diligence**:  Defendants shall diligently file and pursue all required permit

23   applications for the structural BMPs and shall diligently procure contractors, labor, and

24   materials needed to complete all structural BMPs by the required deadlines.

25        119.   **Negotiated Agreement**:  The Parties have negotiated this Consent Decree,

26   and agree that it shall not be construed against the party preparing it, but shall be

27   construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and

28   ambiguity shall not be interpreted against any one party.

120. **Modification of the Consent Decree**: This Consent Decree, and any provisions herein, may not be changed, waived, or discharged, or terminated unless by a written instrument, signed by each of the Parties and approved by the Court.

121. **Assignment**: Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

122. The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, Defendants do not admit liability for any purpose as to any allegation or matter arising out of the 60-Day Notice or the Complaint.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _June 16_, 2016           By: _____
                                 Garry Brown
                                 Inland Empire Waterkeeper

Dated: _June 16_, 2016           By: _____
                                 Garry Brown
                                 Orange County Coastkeeper

Dated: _____, 2016     By: _____
                                 Doug Griffin
                                 San Bernardino Steel

Dated: _____, 2016     By: _____
                                 Doug Griffin
                                 The Herrick Corporation

1     120.  **Modification of the Consent Decree**:  This Consent Decree, and any

2 provisions herein, may not be changed, waived, or discharged, or terminated unless by a

3 written instrument, signed by each of the Parties and approved by the Court.

4     121.  **Assignment**:  Subject only to the express restrictions contained in this

5 Consent Decree, all of the rights, duties and obligations contained in this Consent Decree

6 shall inure to the benefit of and be binding upon the Parties, and their successors and

7 assigns.

8     122.  The Settling Parties agree to be bound by this Consent Decree and not to

9 contest its validity in any subsequent proceeding to implement or enforce its terms. By

10 entering into this Consent Decree, Defendants do not admit liability for any purpose as to

11 any allegation or matter arising out of the 60-Day Notice or the Complaint.

12     **IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree

13 as of the date first set forth below.

14

15 APPROVED AS TO CONTENT

16

17

18 Dated: _____, 2016    By:_____

19                    Garry Brown
                    Inland Empire Waterkeeper

20 Dated: _____, 2016    By:_____

21                    Garry Brown

22                    Orange County Coastkeeper

23 Dated: _____6/24_____, 2016    By:_____

24                    Doug Griffin
                    San Bernardino Steel

25

26 Dated: _____6/24_____, 2016    By:_____

27                    Doug Griffin
                    The Herrick Corporation

28

APPROVED AS TO FORM

ORANGE COUNTY COASTKEEPER
INLAND EMPIRE WATERKEEPER

Dated: _____June 17th_____, 2016        By: _____
                                            Colin Kelly
                                            Attorney for Plaintiffs


LAW OFFICE OF JENNIFER F. NOVAK

Dated: _____June 27_____, 2016          By: _____
                                            Jennifer F. Novak
                                            Law Office of Jennifer F. Novak
                                            Attorney for Plaintiffs


SAN BERNARDINO STEEL
THE HERRICK CORPORATION

Dated: _____, 2016            By:_____
                                            Paul J. Beard II
                                            Attorney for Defendants


**IT IS SO ORDERED.**              UNITED STATES DISTRICT COURT
                                   CENTRAL DISTRICT OF CALIFORNIA

Dated: _____August 30, 2016_____   _____
                                   Honorable Virginia A. Phillips

APPROVED AS TO FORM

ORANGE COUNTY COASTKEEPER
INLAND EMPIRE WATERKEEPER

Dated: _____, 2016          By:_____
                                      Colin Kelly
                                      Attorney for Plaintiffs

LAW OFFICE OF JENNIFER F. NOVAK

Dated: _____, 2016          By:_____
                                      Jennifer F. Novak
                                      Law Office of Jennifer F. Novak
                                      Attorney for Plaintiffs

SAN BERNARDINO STEEL
THE HERRICK CORPORATION

Dated: 6/24, 2016                     By:_____
                                      Paul J. Beard II
                                      Attorney for Defendants

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Dated: August 30, 2016

Honorable Virginia A. Phillips

[Proposed] CONSENT DECREE      30      Case No. 5:15-cv-01256 VAP (FFMx)